UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

CHRISTIAN MAYANCELA and JOHN RAMIREZ, on behalf of themselves and all others similarly situated,

                Plaintiffs,

-against-

TOTAL HOME IMPROVEMENT SERVICES INC., KVL PAINTING SERVICES CORP., JOHN DOE CORPS., and JIMMY ANDRADE,

                Defendants.
------------------------------------------------------------------------ X

**23 Civ. 7680**

**COLLECTIVE AND CLASS ACTION COMPLAINT**

Plaintiffs Christian Mayancela and John Ramirez (together, "Plaintiffs"), on behalf of themselves and all others similarly situated, by their attorneys Pechman Law Group PLLC, complaining of Defendants Total Home Improvement Services Inc., KVL Painting Services Corp., John Doe Corps., and Jimmy Andrade (collectively, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1. Defendants misclassified Mayancela as an independent contractor and Ramirez as a subcontractor's employee to avoid paying them legally required overtime wages, even though Plaintiffs regularly worked over forty hours per workweek throughout their respective employment periods. Defendants also failed to provide Plaintiffs with accurate wage statements with each payment of their wages.

2. Plaintiffs bring this action on behalf of themselves and all similarly situated non-exempt construction workers who worked on Defendants' construction worksites within the last six years to recover unpaid overtime wages, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs under the Fair

Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the New York Labor Law ("NYLL"), and the New York State Wage Theft Prevention Act ("WTPA").

## JURISDICTION

3. This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and it has supplemental jurisdiction over Plaintiffs' NYLL claims pursuant to 28 U.S.C. § 1367.

## VENUE

4. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because the events giving rise to Plaintiffs' claims occurred in this District.

## THE PARTIES

**Plaintiffs**

5. Christian Mayancela resides in Queens County, New York.

6. Defendants have employed Mayancela as a carpenter and painter since approximately 2009.

7. John Ramirez resides in Queens County, New York.

8. Defendants employed Ramirez as a carpenter and painter from approximately 2014 through July 7, 2023.

**Corporate Defendants**

9. Defendant Total Home Improvement Services Inc. is a New York Corporation headquartered at 60 Riverside Boulevard, New York, New York 10069.

10. Total Home Improvement Services Inc. is a "[f]ull-service, high end general contractor(s) and home builder(s) in New York City" (*see* https://this-co.com/ (last visited Aug. 15, 2023)) that has been in business for more than fifteen years.

11. Total Home Improvement Services Inc. works on large residential buildings in the five boroughs performing various types of construction services, including general

construction management, building and designing living spaces, plastering, and installing lighting fixtures, plumbing, shades, and stone and marble finishes.

12. Some notable projects that Total Home Improvement Services Inc. has worked on include private residences in The Kent, 1110 Park Avenue, The Lucida, Georgica, The Wellington Tower, One Riverside Park, and 15 Hudson Yards.

13. Defendant KVL Painting Services Corp. is a New York Corporation registered at 218–31 36th Avenue, 1st Floor, Bayside, New York 11361.

14. KVL Painting Services Corp. was created by Victor M. Valdes, a former Total Home Improvement Services Inc. employee.

15. Upon information and belief, KVL Painting Services Corp.'s registered address is Valdes's home.

16. KVL Painting Services Corp. does not have a website and does not conduct business on its own apart from Total Home Improvement Services Inc.

17. KVL Painting Services Corp. works exclusively with the clients of Total Home Improvement Services Inc. on its construction worksites.

18. KVL Painting Services Corp. uses the same equipment, administrative office, and managers as Total Home Improvement Services Inc.

19. Upon information and belief, John Doe Corporations are other corporate entities that Total Home Improvement Services Inc. retained to perform work on its construction projects and worksites. John Doe Corporations include Renovate BD LLC and Arch 2 Studios LLC.

20. Upon information and belief, the John Doe Corporations work exclusively with the clients of Total Home Improvement Services Inc. on its construction worksites.

21. Upon information and belief, the John Doe Corporations use the same equipment, administrative office, and managers as Total Home Improvement Services Inc.

22. Total Home Improvement Services Inc., KVL Painting Services Corp., and the John Doe Corporations (together, the "Corporate Defendants") jointly employed numerous construction workers within the last six years, including Ramirez.

23. The Corporate Defendants constitute a single integrated enterprise doing business as Total Home Improvement Services Inc. and have employees selling, handling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce.

24. In each of the three years before the filing of this Complaint, the Corporate Defendants have had a combined annual gross volume of sales in excess of $500,000.

25. In each of the three years before the filing of this Complaint, Total Home Improvement Services Inc. alone has also had an annual gross volume of sales in excess of $500,000.

**Defendant Jimmy Andrade**

26. Andrade is Vice President of Operations for Total Home Improvement Services Inc.

27. Andrade oversees the day-to-day operations of the Corporate Defendants.

28. Andrade oversees the work duties of the Corporate Defendants' employees, sets their wages, schedules, hires, disciplines, and fires them, and he keeps track of projects, customers, and equipment that the Corporate Defendants use.

29. Throughout Plaintiffs' employment, Andrade hired, fired, and disciplined employees and set the pay practices of the Corporate Defendants.

30. Plaintiffs had to ask Andrade for changes in their wages or work hours.

31. For example, in approximately 2022, Andrade told Mayancela that the rules of Total Home Improvement Services Inc. forbade Mayancela from leaving the building to get lunch or leaving the worksite generally.

32. For example, Andrade set the bonus amounts that construction workers received and told them in December each year that they would receive a bonus.

33. Whenever there were larger projects, Andrade would head a meeting with all employees, including Plaintiffs, to direct them on the work that needed to be done at the worksite.

34. Throughout Plaintiffs' employment periods, Andrade would often go to worksite himself and supervise workers performing work duties.

35. Andrade also delegated this power and authority through the personnel of Total Home Improvement Services Inc., such as Vice President of Construction & Engineering George Cabessa, Supervisor Anti (last name unknown), Supervisor Christian (last name unknown), Senior Project Manager Tom Quinn, and Supervisor Nick (last name unknown).

36. For example, Quinn and then Anti supervised Ramirez's work throughout his employment, and both would tell Ramirez and other workers what work to do at the worksites.

37. Andrade fired Ramirez.

38. Andrade has fired other workers who worked on the projects of Total Home Improvements Services Inc.

39. Andrade exercised sufficient control over the Corporate Defendants' operations to be considered Plaintiffs' employer under the FLSA and NYLL.

**FACTUAL ALLEGATIONS**

40. Throughout their respective employment periods, Defendants required Plaintiffs to go to different residential buildings in New York City to serve as carpenters and painters.

41. Throughout their respective employment periods, Total Home Improvements Services Inc. provided Plaintiffs with all equipment necessary for them to perform their duties, including but not limited to, carpentry and painting tools.

42. Throughout their respective employment periods, Total Home Improvements Services Inc. required Plaintiffs to wear shirts that bore the Total Home Improvement Services Inc. insignia on them.

43. For example, throughout his employment, Ramirez had to use an identification card with "Total Home Improvements Services Inc." printed on it to enter the residential buildings where he was working.

44. Throughout their respective employment periods, Plaintiffs performed construction and painting work duties on behalf of Total Home Improvement Services Inc. that were the same as the services that the company typically provided to its clients.

45. Throughout their respective employment periods, supervisors and managers of Total Home Improvement Services Inc. set Plaintiffs' work hours, including when Plaintiffs would work and changes to their work schedules.

46. For example, Oestrich would allow Ramirez to be absent or to change his work hours.

47. Throughout their respective employment periods, Total Home Improvement Services Inc. determined the work locations and directed and supervised the work that Plaintiffs and other workers would perform at each location.

48. On a day-to-day basis, Ramirez worked under the supervision of Quinn and Oestrich.

49. For example, Oestrich directed Ramirez to arrive first at the worksite and open the apartments with a key.

50. From approximately January through December 2018, Cabessa was present almost daily at the 171 Columbus Avenue worksite directing Ramirez and other workers on how to perform their duties.

51. For example, in approximately May 2023, Cabessa fired an employee named Julian because he was late to work.

**Plaintiff Mayancela**

52. Except for March to June 2020, from approximately 2016 through December 2022, Mayancela typically worked approximately 36.25 to 46.25 hours per workweek, Monday to Friday from 8:00 a.m. to a time between 4:00 and 6:00 p.m. with a forty-five-minute lunch break per workday.

53. For example, for approximately eight months in 2022, when Mayancela worked on the West 57th Street worksite, he typically worked between 41.25 and 46.25 hours per workweek, Monday to Friday from 8:00 a.m. to a time between 5:00 and 6:00 p.m., with a forty-five-minute lunch break per workday.

54. Since January 2023, Mayancela has typically worked approximately 41.25 to 46.25 hours per workweek, Monday to Friday from 7:00 a.m. to 4:00 or 5:00 p.m. with a forty-five-minute lunch break per workday.

55. In approximately 2016 and 2017, Defendants paid Mayancela $18 per hour worked, including for hours over forty per workweek.

56. In approximately 2018, Defendants paid Mayancela $20 per hour worked, including for hours over forty per workweek.

57. Since approximately January 2019, Defendants have paid Mayancela $25 per hour worked, including for hours over forty per work week.

58. Throughout his employment, Defendants typically paid Mayancela on checks from Total Home Improvement Services Inc., paid to the order of "Mayancela Christian Corp."

59. Although Mayancela did not create or own a corporation, Andrade told Mayancela that his checks had to be written this way.

60. Throughout his employment, Mayancela did not own, establish, or operate his own business.

61. At other times throughout his employment, Defendants paid Mayancela on a check from Total Home Improvement Services Inc. written out to him directly.

**Plaintiff Ramirez**

62. From approximately 2016 through 2017, Ramirez typically worked 38.75 to 46.5 hours per workweek, Monday to Friday, and at least two Saturdays per month, from 7:30 a.m. to 4:00 p.m., with a forty-five-minute lunch break per workday.

63. From approximately January 2018 through March 2020, Ramirez typically worked approximately 47.5 to 57 hours per workweek, Monday to Friday, and at least two Saturdays per month, from 7:00 a.m. to 5:00 p.m., with a forty-five-minute lunch break per workday.

64. From approximately July 2020 through June 2021, Ramirez typically worked approximately 47.5 to 57 hours per workweek, Monday to Friday, and at least two Saturdays per month, from 7:00 a.m. to 5:00 p.m., with a thirty-minute lunch break per workday.

65. From approximately July 2021 through the end of his employment, Ramirez typically worked approximately 45 to 54 hours per workweek, Monday to Friday, and at

least two Saturdays per month, from 6:30 a.m. to 4:00 p.m., with a thirty-minute lunch break per workday.

66. From approximately 2016 through 2020, Defendants paid Ramirez $22 per hour worked, including those over forty per workweek.

67. From approximately 2021 though the end of his employment, Defendants paid Ramirez $25 per hour worked, including those over forty per workweek.

68. Throughout his employment, Defendants paid Ramirez on a check from KVL Painting Services Corp.

## COLLECTIVE ACTION ALLEGATIONS

69. Plaintiffs bring this action on behalf of themselves, and all similarly situated construction workers who worked for the Corporate Defendants on the worksites of Total Home Improvement Services Inc. within the three years prior to the filing of this Complaint who elect to opt-in to this action (the "FLSA Collective").

70. The FLSA Collective consists of over sixty construction workers who have been victims of Defendants' common policy and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them overtime wages.

71. Throughout Plaintiffs' employment, Plaintiffs and the FLSA Collective have regularly worked more than forty hours on at least some workweeks in the last three years, have performed similar construction work duties, and have been subjected to Defendants' common pay policies depriving them of overtime wages at the rate of one and one-half times their regular hourly wage rates for hours worked over forty per workweek.

72. Defendants are aware or should have been aware that the FLSA required them to pay Plaintiffs and the FLSA Collective an overtime premium for hours worked over forty per workweek.

73. Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to Plaintiff and the FLSA Collective.

74. The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. All similarly situated construction workers can be readily identified and located through Defendants' records. They should be notified of and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

75. Plaintiffs bring the claims in this Complaint arising out of the NYLL under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class consisting of all similarly situated construction workers who work or have worked for the Corporate Defendants on the worksites of Total Home Improvement Services Inc. within the six years prior to the filing of this Complaint (the "Rule 23 Class").

76. The employees in the Rule 23 Class are so numerous that joinder of all members is impracticable.

77. The size of the Rule 23 Class exceeds sixty individuals, although the precise number of such employees is unknown. Facts supporting the calculation of that number are presently within the sole control of Defendants.

78. Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

79. Common questions of law and fact exist as to the Rule 23 Class that predominate over questions affecting them individually, including the following:

   a. whether Defendants violated NYLL Article 6, § 190, *et seq.*, and Article 19, § 650, *et seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 142, as alleged in this Complaint;

    b.    whether Defendants failed to pay the Rule 23 Class at the correct overtime wage rate for hours worked in excess of forty per workweek;

    c.    whether Defendants failed to provide the Rule 23 Class with accurate wage statements as required by the NYLL and WTPA; and

    d.    the nature and the extent of the class-wide injury and the measure of damages for those injuries.

80. Plaintiffs' claims are typical of the claims of the Rule 23 Class they seek to represent. Plaintiffs and the members of the Rule 23 Class work or have worked for Defendants at various times within the applicable six-year statutory period. They enjoy the same statutory rights under the NYLL to be paid at the overtime rate for all hours worked over forty in a workweek. Plaintiffs and the Rule 23 Class have sustained similar types of damages because of Defendants' failure to comply with the NYLL.

81. Plaintiffs and the Rule 23 Class have all been injured in that they have been under-compensated due to Defendants' common policies, practices, and patterns of conduct.

82. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.

83. Plaintiffs have retained legal counsel competent and experienced in wage-and-hour litigation and class action litigation.

84. There is no conflict between Plaintiffs and the Rule 23 Class members.

85. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Rule 23 Class have been damaged and are entitled to recovery because of Defendants' common policies, practices, and procedures. Although the relative damages suffered by the individual class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. Individual plaintiffs lack the financial resources

necessary to conduct a thorough examination of Defendants' compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages. In addition, class action litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

86. This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

## FIRST CLAIM
### (Fair Labor Standards Act – Unpaid Overtime)

87. Plaintiffs incorporate by reference all previous paragraphs.

88. Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs and the FLSA Collective overtime wages at the rate of one and one-half their regular hourly wage rates per hour worked over forty per workweek.

89. Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 207(a) and employed Plaintiffs and the FLSA Collective.

90. Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiffs' and the FLSA Collective's compensation.

91. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective.

92. Due to Defendants' violations of the FLSA, Plaintiffs and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

## SECOND CLAIM
### (New York Labor Law – Unpaid Overtime)

93. Plaintiffs incorporate by reference all previous paragraphs.

94. Defendants are employers within the meaning of the NYLL §§ 190, 651(6), 652, and supporting New York State Department of Labor ("NYDOL") Regulations and employed Plaintiffs and the Rule 23 Class.

95. Pursuant to the NYLL and supporting NYDOL Regulations, Defendants were required to pay Plaintiffs and the Rule 23 Class one and one-half (1½) times their regular hourly rates of pay for all hours worked over forty per workweek.

96. Defendants failed to pay Plaintiffs and the Rule 23 Class overtime wages equal to one and one-half (1½) times their regular hourly rates of pay per hour worked over forty per workweek.

97. Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and the Rule 23 Class overtime wages.

98. Due to Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

## THIRD CLAIM
### (New York Labor Law – Failure to Provide Accurate Wage Statements)

99. Plaintiffs incorporate by reference all previous paragraphs.

100. Defendants failed to furnish Plaintiffs and the Rule 23 Class, with each wage payment, with a statement accurately reflecting their: rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages;

deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

101. Due to Defendants' violation of the NYLL, § 195(3), Plaintiffs and the Rule 23 Class are entitled to recover from Defendants liquidated damages of $250 per workday, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1–d).

## FOURTH CLAIM
### (New York Labor Law – Construction Industry Wage Theft)

102. Plaintiffs repeat and incorporate all paragraphs above by reference.

103. Under Section 198–e(1) of the NYLL, a "contractor making or taking a construction contract shall be liable for any debt resulting from an action under section one hundred nine-eight of this article, owed to an employee or third party on the employee's behalf, incurred by a subcontractor at any tier acting under, by, or for the contractor or its subcontractors for the employee's performance of labor."

104. Section 198–e(5) of the NYLL makes a contractor "jointly and severally liable for any unpaid wages, benefits, wage supplements, and any other remedies available pursuant to the requirements of section one hundred ninety-eight" of the NYLL.

105. As an additional and alternative basis of liability, pursuant to NYLL § 198–e, Total Home Improvement Services Inc. is liable for any failure by KVL Painting Services Corp. to pay its employees' overtime wages due.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the Rule 23 Class, respectfully request that this Court:

      a.    certify this case as a class action pursuant to Rule 23 for the class of employees described above, designate Plaintiffs as the class representatives, and designate Plaintiffs' counsel as Class Counsel;

      b.    designate this action as a collective action on behalf of the FLSA Collective and authorize the prompt issuance a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

      c.    declare that Defendants have violated the overtime wage provisions of the FLSA and the NYLL;

      d.    declare that Defendants violated the notice and record keeping provisions of the NYLL and WTPA;

      e.    declare that Defendants' violations of the FLSA and NYLL were willful;

      f.    award Plaintiffs, the FLSA Collective, and the Rule 23 Class unpaid overtime wages;

      g.    award Plaintiffs and the Rule 23 Class statutory damages as a result of Defendants' failure to furnish them with accurate wage statements at the end of each pay period, in violation of the NYLL and WTPA;

      h.    award Plaintiffs, the FLSA Collective, and the Rule 23 Class liquidated damages pursuant to the FLSA and the NYLL;

      i.    award Plaintiffs and the Rule 23 Class pre- and post-judgment interest under the NYLL;

    j.  awarding Plaintiffs, the FLSA Collective, and the Rule 23 Class reasonable attorneys' fees and costs of the action pursuant to the FLSA and the NYLL; and

    k.  award such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

Dated: New York, New York
   August 29, 2023

              PECHMAN LAW GROUP PLLC

              By: _____
                Louis Pechman
                Gianfranco J. Cuadra
                Camille A. Sanchez
                Pechman Law Group PLLC
                488 Madison Avenue, 17th Floor
                New York, New York 10022
                Tel.: (212) 583-9500
                pechman@pechmanlaw.com
                cuadra@pechmanlaw.com
                sanchez@pechmanlaw.com
                *Attorneys for Plaintiffs, the putative*
                *FLSA Collective, and the Putative*
                *Rule 23 Class*